UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM BALDWIN<br>Petitioner, | :<br>:<br>: | CIVIL ACTION NO.<br>3:11-CV-1420 (JCH) |
| v. | :<br>: | |
| UNITED STATES OF AMERICA,<br>Respondent. | :<br>: | FEBRUARY 13, 2013 |

**RULING RE: PETITIONER's MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT to 28 U.S.C. § 2255 (DOC. NO. 1)**

**I.   INTRODUCTION**

On December 12, 2008, a jury found petitioner William Baldwin ("Baldwin") guilty of Conspiracy to Possess with Intent to Distribute and Distribute 50 grams or More of Cocaine Base, in violation of sections 846 and 841(a)(1) and (b)(1)(A) of Title 21 of the United States Code. Baldwin was sentenced to 240 months of imprisonment. Baldwin appealed his conviction to the Second Circuit Court of Appeals, arguing that there was insufficient evidence to support his conviction and that this court erred in denying his request for a missing witness instruction. The Second Circuit affirmed Baldwin's conviction. See (Doc. No. 1236).

Baldwin now brings a Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) pursuant to Section 2255 of Title 28 of the United States Code. Baldwin challenges his conviction and sentence on the grounds that he received ineffective assistance of counsel because his counsel, Harold James Pickerstein ("Pickerstein"), failed to call a witness, Mariel Glover ("Glover"), to testify at trial.

The respondent, the United States of America (the "government") opposes Baldwin's Motion. Specifically, the government argues that Baldwin has failed to show

1

(1) that Pickerstein's performance was objectively unreasonable, and (2) that he suffered prejudice due to Pickerstein's decision not to call Glover.

For the reasons that follow, Baldwin's Motion to Vacate, Set Aside, or Correct Sentence is denied.

## II.     BACKGROUND

On September 23, 2008, a federal grand jury returned a Superseding Indictment against Baldwin and fourteen others. The Superseding Indictment charged that, from January 2006 to December 2007, Baldwin and others conspired to possess with intent to distribute 50 grams or more of cocaine base. Pickerstein was appointed as Baldwin's attorney on April 14, 2008. See (Doc. No. 279).

Glover was arrested on December 11, 2007, for engaging in a crack conspiracy. See Mem. in Supp. Mot. to Vacate at 17; Gov't Mem. in Opp. Mot. to Vacate at 5. In proffer sessions with the government, Glover placed Baldwin as one of his customers. Mem. in Supp. Mot. to Vacate at 17. Glover pled guilty to a conspiracy charge pursuant to a written plea agreement and, in connection with the plea, also entered into a cooperation agreement. Gov't Mem. in Opp. Mot. to Vacate at 5. Pursuant to the cooperation agreement, Glover testified at the trial of three co-defendants, and was expected to testify at Baldwin's trial. Id. However, on the eve of Baldwin's trial, during a trial preparation meeting, Glover informed the government that he had never had narcotics dealings with Baldwin. See Gov't Mem. in Opp. Mot. to Vacate at 5; Mem. in Supp. Mot. to Vacate at 17. The government informed the defense of Glover's exculpatory statements, see Gov't Mem. in Opp. Mot. to Vacate at 6, and declined to

call Glover as a witness based on its belief that he would present perjured testimony on the stand.  See Trial Transcript ("Trial Tr.") at 780.

Both parties and the court understood that Glover would plead the Fifth if called to testify.  Id. at 780.  Pickerstein requested that the court charge the jury with a missing witness charge due to Glover's failure to appear to testify at trial.  See Trial Tr. at 777-78.  The court held that the charge was inappropriate because Glover was equally unavailable to both parties.  Id. at 783.  Attorney Pickerstein stated to the court that, "we have been given reason to believe if we wanted to talk to him, he would claim privilege.  I'm not going to subpoena him to have him claim his privilege."  Id. at 550.

## III.  STANDARD OF REVIEW

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  Ciak v. U.S., 59 F.3d 296, 301 (2d Cir.1995) (internal citation omitted).  "As a general rule, relief is available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Napoli v. United States, 32 F.3d 31, 35 (2d Cir.1994) (internal citations and quotation marks omitted).  Because Baldwin proceeds pro se, the court must read his "submissions broadly so as to determine whether they raise any colorable legal claims." Parisi v. United States, 529 F.3d 134, 139 (2d Cir.2008) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 145–46 (2d Cir.2002)).

3

**IV.    DISCUSSION**

Baldwin claims that Attorney Pickerstein was ineffective for failing to call Glover as a witness as trial.  According to Baldwin, Pickerstein informed him that Glover recanted his statement—that Baldwin purchased crack from him—to the government, but Pickerstein said he "did not want to utilize . . . [Glover at trial] due to his unpredictable nature."  Mem. in Supp. Mot. to Vacate at 17.  According to Baldwin, he told Pickerstein that he wanted to call Glover anyway "to show that he . . . had no dealings with [Glover's] drug operation."  Id.  Baldwin also told Pickerstein that, if Glover testified that Baldwin did obtain drugs from him, he could "impeach his . . . credibility by disclosing his second statement."  Id.  According to Baldwin, Pickerstein refused to secure Glover.  Id.

To prevail on a claim for ineffective assistance of counsel, Baldwin must satisfy the two-part test set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, the petitioner must first show that his counsel's representation "fell below an objective standard of reasonableness."  Id. at 688. Second, the petitioner must show that counsel's deficient performance caused prejudice to the petitioner.  Id. at 694.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

As to the first prong of the test, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."  United States v. Nersesian,

824 F.2d 1294, 1321 (2d Cir. 1987). "[T]he tactical decision to call witnesses should not be second-guessed" by the court, Ruiz v. United States, 2000 WL 1010828, at *5 (S.D.N.Y. July 21, 2000), so long as this decision was "grounded in some strategy that advances the client's interests." Barclay v. Spitzer, 2001 WL 3756467, at *1 (2d Cir. Sep. 23, 2004) (citing Eze v. Senkowski, 321 F.3d 110, 129 (2d Cir. 2003)).

The motion, files, and records of the case conclusively show that Pickerstein made a tactical decision in choosing not to call Glover to testify at trial. Baldwin himself says that Pickerstein did not want to call Glover to the stand because his testimony would be entirely unpredictable.[1] See Mem. in Supp. Mot. to Vacate at 17. In addition, he chose not to call Glover because, as he told the court, there was no reason to subpoena Glover just to have him claim his privilege against self-incrimination. See Trial Tr. at 550. Based on this evidence, the court concludes that Pickerstein's conduct "appears to fall within the wide range of reasonable professional representation." Nersesian, 824 F.2d at 1321.

Because Baldwin has failed to establish that Pickerstein's conduct was objectively unreasonable, there is no need for the court to consider whether the decision not to call Glover prejudiced Baldwin. However, the court will note that Baldwin cannot meet this second prong either. First, as discussed above, there is evidence that Glover may not have testified favorably for Baldwin or even at all because he was likely going to invoke his privilege against self-incrimination. Therefore, there is no evidence that, but-for Glover's testimony, the result of the trial would be different. See Stallings v. Wood, 2006 WL 842380, at *21 (E.D.N.Y. Mar. 27, 2008) (stating that the petitioner

---

[1] As the court noted during trial, "on any given day, we don't know who Mr. Glover is favorable to." Trial Tr. at 548.

5

provided no basis for speculating that the witness would have testified favorably much less that the testimony would have resulted in an acquittal); see also United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) (holding that the district court did not err in "finding that Smith failed to demonstrate a reasonable probability that, but for counsel's allegedly unprofessional conduct, the result of the trial would have been different"). Further, the government introduced additional evidence at trial that supported Glover's original statement that Baldwin was a customer of his. When Baldwin was arrested, he was found in possession of five grams of crack cocaine. He told the agents, after being Mirandized, that he obtained the crack from Glover. See Trial Tr. at 506. Therefore, any testimony that Baldwin did not purchase drugs from Glover is clearly belied by Baldwin's own admission. The court cannot conclude that Glover's testimony—even if favorable to the defense[2]—would have led to a different outcome for Baldwin.

## V.  CONCLUSION

For the foregoing reasons, Baldwin's ineffective assistance of counsel claim regarding Attorney Pickerstein's tactical decision to not call Mariel Glover as a witness is without merit. Therefore, the court **DENIES** Baldwin's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1).

---

[2] Of course, even if Glover testified that Baldwin never had narcotics dealings with him, his testimony would be subject to impeachment based on his prior inconsistent statements. There is no reason to believe that the jury would have credited Glover's testimony as truthful in light of the government's impeachment. See Barnes v. Burge, 372 Fed. Appx. 196, 201-02 (2d Cir. 2010) (stating that failure to call a witness was not prejudicial because the testimony "would have been impeached, to devastating effect"). As the court said during trial, if Glover were "called by the government and gave testimony . . . consistent with the position he took in the November preparation session . . . that he would be subject to withering cross-examination and there likely would be information that could be brought out that might be more harmful to the defendants than the jury's disbelief of his testimony on direct." Trial Tr. at 784.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 13th day of February, 2013.


                                                                               /s/ Janet C. Hall
                                                                      Janet C. Hall
                                                                      United States District Judge